IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| PRINCIPAL NATIONAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 23-cv-01130-LKG |
| v. | ) ) | Dated:  August 8, 2024 |
| JULIE ZIGMENT, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

This civil action involves a claim for the rescission of two life insurance policies issued on the life of the Decedent, Robert Zigment (the "Decedent"), brought by Plaintiff, Principal National Life Insurance Company ("Principal National"), against Defendant, Julie Zigment. *See generally* ECF No. 1.  Principal National commenced this matter on April 27, 2023.  *Id*.  The Defendant has not answered, nor otherwise responded to, the complaint.  ECF No. 13 at 1; ECF No. 17 at ¶¶ 3-4, 6.  And so, the Clerk of the Court entered an Order of Default on July 21, 2023. ECF No. 14.

On October 2, 2023, Principal National filed a motion for default judgment against the Defendant, pursuant to Fed. R. Civ. P. 55(b).  ECF No. 17.  No hearing is necessary to resolve the motion.[1]  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** Principal National's motion for default judgment; (2) **ENTERS JUDGMENT** in favor of Principal National against the Defendant; and (3) **DECLARES** Policy No. 9701540 and Policy No. 6257124 to be rescinded, void *ab initio* and of no effect.

---

[1] The Court reads Principal National's motion for default judgment not to seek monetary damages or attorneys' fees.  And so, no hearing is necessary to resolve the motion.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### A.   Factual Background

This declaratory judgment action involves a claim for the rescission of two life insurance policies, issued on the life of the Decedent, Robert Zegment, brought by Principal National against the Decedent's widow, Defendant Julie Zigment. *See generally* ECF No. 1. Specifically, Principal National seeks to rescind Term Life Insurance Policy No. 9705140 and Term Life Insurance Policy No. 9705141 (the "Policies"), which it issued to insure the Decedent's life in 2022, upon the grounds that the Decedent misrepresented his health history on the applications and supplemental statements submitted to obtain the Policies. *Id*. at ¶¶ 56-59.

In the complaint, Principal National asserts a claim of rescission against the Defendant pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and Maryland law, Md. Code Ann., Ins. § 12-207. *Id*. at ¶¶ 3, 68, 79. As relief, Principal National seeks a declaratory judgment that the Policies are adjudged rescinded, void *ab initio* and of no effect, and to recover attorneys' fees and costs from the Defendant. *Id*. at Prayer for Relief.

The Parties

Plaintiff Principal National is a corporation organized under the laws of Iowa, with its principal place of business located in Des Moines, Iowa. *Id*. at ¶ 1.

Defendant Julie Zigment is a resident of Harford County, Maryland and the widow of the Decedent. *Id*. at ¶ 2.

The Decedent's Applications For Life Insurance Policies

As background, the Decedent previously served as the Chief Financial Officer for Zook Molasses Company ("Zook"). *Id*. at ¶ 7. In 2021, the Decedent met with agents from Creative Financial Group to discuss key person insurance and expressed an interest in also applying for personal life insurance coverage. *Id*. at ¶¶ 8-9.

---

[2] The facts recited in this memorandum opinion are derived from the complaint, Principal National's motion for entry of default judgment, the memorandum in support thereof and a sworn declaration from Michelle R. Palmer, a Managing Chief Underwriter for Principal National. ECF Nos. 1, 17, 18. Copies of the Decedent's Applications are attached as exhibits to Principal National's complaint and are incorporated by reference into the complaint. ECF Nos. 1-2, 1-3, 1-4.

On December 13, 2021, the Decedent submitted three applications (the "Applications") for life insurance, which resulted in the issuance of three insurance policies: (1) Term Life Insurance Policy No. 9705141, with a face amount of $500,000; (2) Term Life Insurance Policy No. 9705140, with a face amount of $1 million; and (3) Flexible Premium Adjustable Universal Life Insurance Policy No. 6257124, with a face amount of $100,000.  *Id*. at ¶ 10; *see also* ECF Nos. 1-2, 1-3, 1-4.

Part A of the Applications for the aforementioned insurance policies contains the following "Medical Question:"

> Within the last ten years, has the Proposed Insured been treated for or been diagnosed by a member of the medical profession as having a heart condition, chest pain, stroke, cancer, diabetes, alcohol abuse or drug dependency?

ECF No. 1 at ¶ 14; *see also* ECF No. 1-2 at 30; ECF No. 1-3 at 26; ECF No. 1-4 at 59.  The Decedent answered "No" to this question.  ECF No. 1-2 at 30; ECF No. 1-3 at 26; ECF No. 1-4 at 59.  But the Decedent disclosed in his response to a different question in the Applications that he had previously been diagnosed with skin cancer.  ECF No. 1 at ¶ 15.

Part B of the Applications contains the following questions:

> Question 18a: In the last ten years, have you been treated for or diagnosed by a member of the medical profession as having: high blood pressure, heart attack, chest pain, heart murmur, irregular heartbeat, stroke or any other disease or disorder of the heart or blood vessels?
>
> Question 18c: In the last ten years, have you been treated for or diagnosed by a member of the medical profession as having: asthma, bronchitis, sleep apnea, tuberculosis or any other disease or disorder of the lings or respiratory system?
>
> Question 22a: In the last five years, have you had any medical tests (excluding tests for HIV (AIDS Virus)), hospitalization, illness or injury not provided in response to a previous question?
>
> Question 22b: In the last five years, have you consulted a doctor, chiropractor, psychiatrist, psychologist, counselor, therapist or other healthcare provider not provided in response to a previous question?
>
> Question 23: Are you taking or have you been advised by a member of the medical profession in the last five years to take any medication or

supplement (including medical marijuana) or treatment not provided in response to a previous question?

*Id*. at ¶ 17; *see also* ECF No. 1-2 at 32-33; ECF No. 1-3 at 29-30; ECF No. 1-4 at 62-63.  The Decedent answered "No" to all of these questions.  ECF No. 1 at ¶ 17; ECF No. 1-2 at 32-33; ECF No. 1-3 at 29-30; ECF No. 1-4 at 62-63.

In addition, the Applications include the following language under the caption, "AGREEMENT":

> **Statements in Application**.  I represent that all statements in this application are true and complete to the best of my knowledge and belief and were correctly recorded before I signed by name below.  I understand and agree that the statements in the application, including statements by the Proposed Insured in any medical questionnaire that becomes a part of this application, shall be the basis of any insurance issued.  I also understand that misrepresentations can mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

ECF No. 1 at ¶ 19; *see also* ECF No. 1-2 at 35; ECF No. 1-3 at 31; ECF No. 1-4 at 64.

The Decedent signed his applications for Policy No. 9705140 and Policy No. 6257142 on December 13, 2021.  ECF No. 1 at ¶ 18.  He signed his application for Policy No. 9705141 on January 7, 2022.  *Id*.

The Decedent also completed and signed supplemental statements for each of the Applications, which are incorporated into the Applications.  *Id*. at ¶ 20; *see also* ECF No. 1-2 at 25; ECF No. 1-3 at 22; ECF No. 1-4 at 54.  In each of these supplemental statements, the Decedent answered "No" when asked: "Have you consulted or been treated by a member of the medical profession for an illness or injury since the date of [the] application?"  ECF No. 1 at ¶ 21; ECF No. 1-2 at 25; ECF No. 1-3 at 22; ECF No. 1-4 at 54.

Principal National issued Policy No. 9705140 and Policy No. 6257124 to the Decedent on January 20, 2022.  ECF No. 1 at ¶ 25; ECF No. 1-3 at 3; ECF No. 1-4 at 5.  Principal National issued Policy No. 9705141 to Zook on February 1, 2022.  ECF No. 1 at ¶ 25; ECF No. 1-2 at 3.  On March 25, 2022, the Decedent submitted a beneficiary change form for Policy No. 9705140 and Policy No. 6257124, designating his beneficiaries as: Defendant Julie Zigment 70%;

Matthew Zigment, son, 10%; Christina Poole, daughter, 10%; and Robert A. Zigment, son, 10%. ECF No. 1 at ¶ 29.

Principal National's Contestable Review

The Decedent passed away on March 27, 2022, from complications due to COVID-19. *Id*. at ¶ 30; ECF No. 1-5.  Shortly thereafter, Defendant submitted an insurance claim form seeking the proceeds of the Policies.  ECF No. 1 at ¶ 33.

Because the Decedent died within the contestable period, Principal National initiated a routine review of the Decedent's policies, which included gathering the Decedent's medical records and interviewing the Defendant.  *Id*. at ¶¶ 34, 39; *see also* ECF No. 18 at ¶¶ 4-5.  During the contestable review, the Defendant revealed to Principal National that the Decedent had been diagnosed with COVID-19 on December 11, 2021, two days before filing the Applications.  ECF No. 1 at ¶¶ 38-40.

The Decedent's medical records show that, in the ten months prior to completing the Applications, the Decedent: (1) had an office visit at WellSpan Internal Medicine – New Holland, to establish care following a visit to the emergency room for shortness of breath, dyspnea and chest pain; (2) underwent multiple ECH stress tests; (3) had a respiratory infection, for which he was prescribed antibiotics; (4) dealt with acute, severe bilateral lower abdominal pain, low back pain, multiple episodes of diarrhea and a fever, for which he was advised to go to the emergency room; (5) had an office visit at WellSpan Internal Medicine – New Holland, where he complained of coughing, wheezing, shortness of breath, chills and extreme fatigue; (6) informed a doctor that his asthma symptoms worsened in late November and early December 2020; and (7) underwent a chest CT scan, which showed subsegmental atelectasis (complete or partial collapse of the entire lung or lobe of the lung) in his lung bases.  *Id*. at ¶ 41.  The Decedent's medical records also indicate that, after he had signed the Applications, but before he signed the supplemental statements, he: (1) had a telephone consultation at WellSpan Pulmonary & Sleep Medicine, in which he stated he was interested in monoclonal antibody treatment; (2) was treated at A-Z Urgent Care, because he had tested positive for COVID-19 and was symptomatic; and (3) had an office visit at WellSpan Internal Medicine – Ephrata, where he complained of balance issues, dizziness and lightheadedness.  *Id*. at ¶ 42.

In addition, the Decedent's medical records show that he presented to the Ephrata Community Hospital with malaise, abdominal pain, nausea, vomiting and diarrhea on February 9, 2022.  *Id*. at ¶ 43.  Lastly, the Decedent's medical records show that the Decedent remained symptomatic with abdominal pain, nausea, shortness of breath, low blood pressure and balance issues causing multiple falls between February 9, 2022, and March 22, 2022.  *Id*. at ¶ 44.

Based upon this information, Principal National concluded that the Decedent should have answered "Yes" to the MEDICAL QUESTION on Part A of the Applications and to Questions 18a, 18c, 22a, 22b and 23 on Part B of the Applications.  *Id*. at ¶ 45.  Based upon this information, Michelle R. Palmer, a Managing Chief Underwriter for Principal National, also determined that, had Principal National been aware of the Decedent's true medical history, it would have declined to offer coverage under the Policies.  ECF No. 18 at ¶ 6.  And so, Principal National notified Defendant and the Decedent's three children that it could not pay the Decedent's life insurance benefits.  ECF No. 1 at ¶ 46.

Principal National also mailed rescission agreements and checks representing refunds of the three policies' premiums, plus interest, to Zook, the Defendant and the three other named beneficiaries.  *Id*. at ¶¶ 47-52.  Principal National maintains that the Defendant "has refused to sign the [r]escission [a]greement[] or negotiate the premium refund check."  *Id*. at ¶ 53.

Principal National's Allegations

Principal National alleges in this declaratory judgment action that the Decedent made multiple misrepresentations in the Applications and his supplemental statements, which Principal National relied upon in determining whether, and in what amount, to offer coverage to the Decedent.  *Id*. at ¶¶ 56, 60.  In this regard, Principal National alleges that the Decedent knew of and omitted his history of various illnesses, including asthma, restrictive lung disease, subsegmental atelectasis at both lung bases, respiratory infection, bronchitis, obstructive sleep apnea, sinus bradycardia and premature ventricular contraction, atherosclerotic calcification of coronary arteries and cardiomegaly with left atrial enlargement.  *Id*. at ¶¶ 57, 70.

Principal National further alleges that the Decedent knew and omitted that he was positive for COVID-19, when he completed the Applications.  *Id*. at ¶¶ 58, 60, 70.  And so, Principal National contends that it would have declined to offer coverage to the Decedent if it had been aware of his true health history.  *Id*. at ¶¶ 61, 65; *see also* ECF No. 18 at ¶ 6.

Lastly, Principal National also alleges that it has tendered a refund of all premiums paid for the Policies, plus interest, but that the Defendant has rejected the tender to date. ECF No. 1 at ¶ 78. And so, Principal National maintains that it is entitled to rescind the Policies and seeks a declaratory judgment against the Defendant declaring that the Policies are rescinded, void *ab initio* and of no effect. *Id*. at Prayer for Relief; *see also* Md. Code Ann., Ins. § 12-207.

### B.  Procedural History

Principal national commenced this declaratory judgment action on April 27, 2023. ECF No. 1.

The summons and complaint were properly served on Defendant on May 6, 2023. ECF No. 8. The Defendant neither answered, nor otherwise responded to, the complaint. And so, Principal National filed a motion for Clerk's entry of default on June 30, 2023. ECF No. 13.

On July 21, 2023, the Clerk of the Court entered an Order of Default against the Defendant. ECF No. 14. On October 2, 2023, Principal National filed the pending motion for default judgment, pursuant to Fed. R. Civ. P. 55(b)(2). ECF No. 17. On August 7, 2024, Principal National filed a sworn declaration from Michelle R. Palmer, a Managing Chief Underwriter for Principal National, regarding the company's contestable review of the Policies. ECF No. 18.

### III.  LEGAL STANDARDS

### A. Default Judgment

Federal Rule of Civil Procedure 55 governs default judgments entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment is appropriate when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In deciding whether to grant a default judgment, the Court takes as true the well-pled factual allegations of the complaint, other than those pertaining to damages. *Ryan v.*

7

*Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  In this regard, the Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in this context.  *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011).  And so, where a petition avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment.  *Russell v. Railey*, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see, e.g.*, *Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of facts that 'show' why those conclusions are warranted.").

Upon a finding that the plaintiff has established liability, the Court must independently determine the appropriate amount of damages.  *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010).  The Court must do so "because 'an allegation relating to the amount of damages is not deemed admitted based on a defendant's failure to deny in a required responsive pleading.'"  *Clancy v. Skyline Grill, LLC*, 2012 WL 5409733, at *3 (D. Md. Nov. 5, 2012) (quoting *Hartford Fin. Servs. Grp. v. Carl J. Meil, Jr., Inc.*, 2011 WL 1743177, at *7 (D. Md. May 5, 2011)).

### B. Applicable Maryland Law

Under Maryland law, the Court may declare an insurance policy void *ab initio* if it finds that the insurer issued the policy by relying on a material misrepresentation in the application for that policy.  *Dominant Investments 113, LLC v. U.S. Liab. Ins. Co.*, 247 F. Supp. 3d 696, 700 (D. Md. 2017); *see also Gary v. USAA Life Ins. Co.*, 229 F. Supp. 3d 365, 376 (D. Md. 2017), *aff'd* 698 F. App'x 159 (4th Cir. 2017) ("Under Maryland law, a material misrepresentation in the form of an incorrect statement in an application invalidates a policy issued on the basis of such application.").  In this regard, the provision of the Maryland Code that governs "[s]tatements in applications for life or health insurance or annuities" provides that:

> A misrepresentation, omission, concealment of facts, or incorrect statement does not prevent a recovery under the policy or contract unless:

> (1) the misrepresentation, omission, concealment, or statement is fraudulent or material to the acceptance of the risk or to the hazard that the insurer assumes; or
>
> (2) if the correct facts had been made known to the insurer, as required by the application for the policy or contract or otherwise, the insurer in good faith would not have:
>
>> (i) issued, reinstated, or renewed the policy or contract;
>>
>> (ii) issued the policy or contract in as large an amount or at the same premium or rate; or
>>
>> (iii) provided coverage with respect to the hazard resulting in the loss.

Md. Code Ann., Ins. § 12-207(b).

The Court undertakes a two-step analysis to determine whether an insurer is justified in rescinding an insurance policy. *Encompass Home & Auto Ins. Co. v. Harris*, 93 F. Supp. 3d 424, 432 (D. Md. 2015). First, the Court assesses whether a misrepresentation occurred. *Id*. If so, the Court must evaluate "whether [that] misrepresentation was material to the risk assumed by the insurer." *Id*. "A material misrepresentation is one that may 'reasonably have affected the determination of the acceptability of the risk.'" *Mut. Benefit Ins. Co. v. R. Gates Constr. Co.*, 503 F. Supp. 3d 344, 359 (D. Md. 2020) (quoting *Jackson v. Hartford Life & Annuity Ins. Co.*, 201 F. Supp. 2d 506, 512 (D. Md. 2002)). And so, this Court has held that "an uncontested affidavit from an insurer's underwriting department that a policy would not have been issued if the insurer had known of the applicant's misrepresentation[s] is 'adequate to find materiality as a matter of law.'" *Dominant Investments 113, LLC*, 247 F. Supp. 3d at 703 (quoting *Essex Ins. Co. v. Hoffman*, 168 F. Supp. 2d 547, 552 (D. Md. 2001)); *see also Bryant v. Provident Life and Accident Ins. Co.*, 22 F. Supp. 2d 495, 499 (D. Md. 1998).

When deciding whether to rescind a policy under Section 12-207(b), the insurer need not consider the applicant's state of mind when completing the application. *Fitzgerald v. Franklin Life Ins. Co.*, 465 F. Supp. 527, 534 (D. Md. 1979) ("The insurer may avoid the policy regardless of whether the material misrepresentation [was] made intentionally, or through mistake and in good faith."). While the onus is on the insurer to establish that a covered individual made misrepresentations in an insurance application, there remains "a heavy burden on the applicant to be responsible for all statements in or omissions from the application submitted." *Gary*, 229 F.

9

Supp. 3d at 376 (quoting *Fitzgerald*, 465 F. Supp. at 535).  Given this, a "condition precedent" to an insurer's reliance on an application is that the application "must be reasonably designed to elicit from [the applicant] the information which he possesses, material to the risk." *Stumpf v. State Farm Mut. Auto. Ins. Co.*, 251 A.2d 362, 367 (Md. 1969).

Lastly, the United States Court of Appeals for the Fourth Circuit has held that insurance policies "must be construed 'as a whole to determine the parties' intention.'" *Certain Underwriters at Lloyd's, London v. Cohen*, 785 F.3d 886, 890 (4th Cir. 2015).  And so, if the questions to which an applicant gives false answers are subject to more than one reasonable interpretation, such questions are ambiguous, and cannot give rise to a material misrepresentation.  *Id*. at 891-92.

**C.  Rescission**

Maryland courts have long recognized that:

> When a contracting party is displeased with the other's performance, he may follow either of two alternative courses of action, if under the facts they are open to him: (1) he can reaffirm the existence of the contract and seek specific performance when appropriate or claim damages for its breach, or (2) he can repudiate the contract altogether and request rescission.

*Lazorcak v. Feuerstein*, 327 A.2d 477, 480 (Md. 1974) (citing *Kemp v. Weber*, 24 A.2d 779, 780 (Md. 1942)).  With regards to the recission of a contract, a failure of a party to perform its part of a contract, "though it may give rise to a suit for damages, does not in and of itself act to rescind that contract." *Id*. at 481.  Rather, the general rule is that the party seeking rescission must "indicate to the other party at least the intent to restore the parties to the relative positions which they would have occupied if no such contract had ever been made, and this as soon as the disenchanted party learns of the facts." *Id.* (citing *Kemp*, 24 A.2d at 780).

The offer of restoration must "demonstrate an unconditional willingness to return to the other party both the consideration that was given by that party and any benefits received under the contract." *Id.* (citations omitted).  In addition, a party seeking recission "must demonstrate he acted promptly after discovery of the ground for recission," and "[h]e must also show that he tendered to [the other party] all consideration and benefits received under the contract immediately after notice of the ground for recission." *Finch v. Hughes Aircraft Co.*, 469 A.2d

10

867, 894 (Md. Ct. Spec. App. 1984) (citations omitted).  But, "if a party who knows the facts which would justify rescission, does any act which recognizes the continued validity of the contract or indicates that he still feels bound under it, he will be held to have waived his right to rescind."  *Lazorcak*, 327 A.2d at 481.

## IV. ANALYSIS

Principal National seeks a default judgment against the Defendant for failure to plead, or to otherwise defend, in this matter, and a declaration from the Court that the Policies at issue in this dispute are rescinded, void *ab initio* and of no effect, due to the Decedent's material misrepresentations on the Applications.[3]  ECF No. 17-1 at 23.  For the reasons that follow, the Court: (1) **GRANTS** Principal National's motion for default judgment; (2) **ENTERS JUDGMENT** in favor of Principal National against the Defendant; and (3) **DECLARES** Policy No. 9701540 and Policy No. 6257124 to be rescinded, void *ab initio* and of no effect.

### A. Principal National Is Entitled To A Declaratory Judgment That The Policies Are Void *Ab Initio*

The Court may declare the Policies at issue in this declaratory judgment action void *ab initio* if it determines that Principal National issued the Policies by relying on a material misrepresentation in the Decedent's Applications.  *Dominant Investments 113, LLC v. U.S. Liab. Ins. Co.*, 247 F. Supp. 3d 696, 700 (D. Md. 2017); *see also Gary v. USAA Life Ins. Co.*, 229 F. Supp. 3d 365, 376 (D. Md. 2017), *aff'd* 698 F. App'x 159 (4th Cir. 2017) ("Under Maryland law, a material misrepresentation in the form of an incorrect statement in an application invalidates a policy issued on the basis of such application.").  In this regard, the Maryland Code provides, in relevant part, that:

> A misrepresentation, omission, concealment of facts, or incorrect statement does not prevent a recovery under the policy or contract unless:
>
> (1) the misrepresentation, omission, concealment, or statement is fraudulent or material to the acceptance of the risk or to the hazard that the insurer assumes . . . .

---

[3] In the complaint, Principal National also seeks to recover attorneys' fees and costs from the Defendant.  ECF No. 1 at Prayer for Relief.  But Principal National does not request attorneys' fees and costs in its motion for default judgment.  ECF No. 17 at 21.

11

Md. Code Ann., Ins. § 12-207(b).  And so, the Court first assesses whether the Applications at issue here contained a misrepresentation.  *Encompass Home & Auto Ins. Co. v. Harris*, 93 F. Supp. 3d 424, 432 (D. Md. 2015).  If so, the Court next considers whether the Decedent's "misrepresentation was material to the risk assumed by the insurer."  *Id*.

### 1. The Applications Contain Misrepresentations About The Decedent's Health

As an initial matter, a careful reading of the complaint and the Applications makes clear that the Applications contain numerous misrepresentations and/or omissions about the status of the Decedent's health.  Principal National alleges in the complaint that, on December 13, 2021, the Decedent submitted the Applications for life insurance, which resulted in the issuance of, among other things, the Policies at issue in this case.  ECF No. 1 at ¶ 10.  Principal National attaches as exhibits to the complaint the Applications for both of the Policies, which are dated December 13, 2021, and signed by the Decedent.  *See* ECF No. 1-3 at 32; ECF No. 1-4 at 65.

As Principal National correctly observes in the complaint, Part A of the Applications, which are identical for both Policies, contains the following "Medical Question:"

> Within the last ten years, has the Proposed Insured been treated for or been diagnosed by a member of the medical profession as having a heart condition, chest pain, stroke, cancer, diabetes, alcohol abuse or drug dependency?

ECF No. 1 at ¶ 14; *see also* ECF No. 1-3 at 26; ECF No. 1-4 at 59.  As Principal National also correctly observes in the complaint, the Decedent answered "No" to this question in the Applications.  ECF No. 1 at ¶ 15; *see also* ECF No. 1-3 at 26; ECF No. 1-4 at 59.

Part B of the Applications also contains the following questions regarding the Decedent's medical history:

> Question 18a: In the last ten years, have you been treated for or diagnosed by a member of the medical profession as having: high blood pressure, heart attack, chest pain, heart murmur, irregular heartbeat, stroke or any other disease or disorder of the heart or blood vessels?
>
> Question 18c: In the last ten years, have you been treated for or diagnosed by a member of the medical profession as having: asthma, bronchitis, sleep apnea, tuberculosis or any other disease or disorder of the lings or respiratory system?

12

> Question 22a: In the last five years, have you had any medical tests (excluding tests for HIV (AIDS Virus)), hospitalization, illness or injury not provided in response to a previous question?
>
> Question 22b: In the last five years, have you consulted a doctor, chiropractor, psychiatrist, psychologist, counselor, therapist or other healthcare provider not provided in response to a previous question?
>
> Question 23: Are you taking or have you been advised by a member of the medical profession in the last five years to take any medication or supplement (including medical marijuana) or treatment not provided in response to a previous question?

ECF No. 1-3 at 29-30; ECF No. 1-4 at 62-63. Again, the Applications make clear that the Decedent answered "No" to these questions. *Id*.

In addition, Principal National alleges in the complaint that the Decedent completed and signed supplemental statements for each of the Applications, which were incorporated into the Applications. ECF No. 1 at ¶ 20; *see also* ECF No. 1-3 at 22; ECF No. 1-4 at 54. In these supplemental statements, the Decedent answered "No" to the question: "Have you consulted or been treated by a member of the medical profession for an illness or injury since the date of [the] application?" ECF No. 1 at ¶ 21; ECF No. 1-3 at 22; ECF No. 1-4 at 54. The Decedent also acknowledged when he signed the Applications that: "I . . . understand that misrepresentations can mean denial of an otherwise valid claim and rescission of the policy during the contestable period." ECF No. 1 at ¶ 19; *see also*; ECF No. 1-3 at 31; ECF No. 1-4 at 64.

Principal National has shown that the aforementioned representations by the Decedent were false. As Principal National alleges in the complaint, its contestable review of the Policies revealed that the Decedent had been diagnosed with COVID-19 on December 11, 2021, which was two days before the Decedent filed the Applications. ECF No. 1 at ¶¶ 18, 40. The Applications also make clear that the Decedent did not disclose his COVID diagnosis in the Applications, nor in his subsequent supplemental statements. *Id*. at ¶¶ 17, 58.

Principal National also alleges that its contestable review of the Policies revealed that the Decedent's medical records show that, in the ten months prior to completing the Applications, the Decedent: (1) had an office visit at WellSpan Internal Medicine – New Holland, to establish care following a visit to the emergency room for shortness of breath, dyspnea and chest pain; (2) underwent multiple ECH stress tests; (3) had a respiratory infection, for which he was prescribed

13

antibiotics; (4) dealt with acute, severe bilateral lower abdominal pain, low back pain, multiple episodes of diarrhea and a fever, for which he was advised to go to the emergency room; (5) had an office visit at WellSpan Internal Medicine – New Holland, where he complained of coughing, wheezing, shortness of breath, chills and extreme fatigue; (6) informed a doctor that his asthma symptoms worsened in late November and early December 2020; and (7) underwent a chest CT scan, which showed subsegmental atelectasis (complete or partial collapse of the entire lung or lobe of the lung) in his lung bases. *Id*. at ¶ 41.

In addition, Principal National contends that its contestable review further revealed that the Decedent's medical records show that, after he had signed the Applications, but before he signed the supplemental statements, he: (1) had a telephone consultation at WellSpan Pulmonary & Sleep Medicine, in which he stated he was interested in monoclonal antibody treatment; (2) was treated at A-Z Urgent Care, because he had tested positive for COVID-19 and was symptomatic; and (3) had an office visit at WellSpan Internal Medicine – Ephrata, where he complained of balance issues, dizziness and lightheadedness. *Id*. at ¶ 42. Principal National also alleges that the Decedent's medical records show that he presented to the Ephrata Community Hospital with malaise, abdominal pain, nausea, vomiting and diarrhea on February 9, 2022. *Id*. at ¶ 43. Lastly, Principal National alleges that the Decedent's medical records show that the Decedent remained symptomatic with abdominal pain, nausea, shortness of breath, low blood pressure and balance issues causing multiple falls between February 9, 2022, and March 22, 2022. *Id*. at ¶ 44.

Given this evidence, Principal National persuasively argues that the Decedent should have answered "Yes" to the Medical Question on Part A of the Applications and to Questions 18a, 18c, 22a, 22b and 23 on Part B of the Applications, but he failed to do so. *Id*. at ¶ 45. And so, the Court agrees with Principal National that the Applications and the Decedent's supplemental statements contain misrepresentations and/or omissions about the Decedent's health and medical history.

### 2. The Decedent's Misrepresentations And Omissions Were Material

Principal National has also shown that the Decedent's misrepresentations and/or omissions regarding his health and medical history were material to the risk that it assumed as the insurer under the Policies. *Harris*, 93 F. Supp. 3d at 432. This Court has held that a material

14

misrepresentation is one that may "reasonably have affected the determination of the acceptability of the risk." *Mut. Benefit Ins. Co. v. R. Gates Constr. Co.*, 503 F. Supp. 3d 344, 359 (D. Md. 2020). And so, the Court has held that "an uncontested affidavit from an insurer's underwriting department that a policy would not have been issued if the insurer had known of the applicant's misrepresentation[s] is 'adequate to find materiality as a matter of law.'" *Dominant Investments 113, LLC*, 247 F. Supp. 3d at 703 (quoting *Essex Ins. Co. v. Hoffman*, 168 F. Supp. 2d 547, 552 (D. Md. 2001)); *see also Bryant v. Provident Life and Accident Ins. Co.*, 22 F. Supp. 2d 495, 499 (D. Md. 1998).

In this case, the Decedent's failure to disclose his COVID-19 diagnosis is a material omission regarding his health status and medical history. The well-documented risks associated with COVID-19, especially for individuals with underlying health conditions, shows that the Decedent's diagnosis would have been material to the risk that Principal National was wiling to accept in determining whether to issue the Policies. Indeed, Principal National represents to the Court that its underwriting guidelines at the time would have required that it delay a decision on issuing the Policies until Principal National confirmed that the Decedent had recovered from COVID-19 and assessed how the disease might impact any of the Decedent's underlying health conditions. ECF No. 1 at ¶¶ 62-63, 65; ECF No. 17-1 at 23; ECF No. 18 at ¶¶ 7-8.

Principal National also persuasively argues that the Decedent's false responses to the Medical Question on Part A and Questions 18a, 18c, 22a, 22b and 23 on Part B of the Applications deprived it of important and material information about the Decedent's medical history. For example, the record before the Court shows that the Decedent withheld significant information from Principal National about his experiences with several chronic medical conditions, including asthma, restrictive lung disease, subsegmental atelectasis at both lung bases, respiratory infection, bronchitis, obstructive sleep apnea, sinus bradycardia and premature ventricular contraction, atherosclerotic calcification of coronary arteries and cardiomegaly with left atrial enlargement. ECF No. 1 at ¶¶ 57, 70; ECF No. 17-1 at 23.

Principal National also represents to the Court that it would have declined to offer coverage to the Decedent if it had been aware of his true medical history. ECF No. 1 at ¶¶ 61, 65; ECF No. 18 at ¶ 6. As discussed above, Principal National's underwriting policies would have required that it delay a determination of whether to issue the Policies, until after confirming

15

that the Decedent had fully recovered from COVID-19.  ECF No. 1 at ¶ 62; ECF No. 18 at ¶ 7.  Principal National's underwriting guidelines would have similarly required that it determine whether the Decedent's bout with COVID would exacerbate his underlying health conditions.  ECF No. 1 at ¶ 63; ECF No. 18 at ¶ 8.  Principal National explains in a sworn declaration from Michelle R. Palmer, a Managing Chief Underwriter for Principal National, that it would have declined to offer coverage to the Decedent at the time and would have only reconsidered extending coverage to the Decedent after he made a full recovery from these conditions.  ECF No. 18 at ¶¶ 6, 10.  And so, the Court is satisfied that the Decedent's misrepresentations in the Applications were material.  *See, e.g.*, *Dominant Investments 113, LLC*, 247 F. Supp. 3d at 703; *Bryant*, 22 F. Supp. 2d at 499.

### 3. Principal National Is Entitled To The Remedy Of Rescission

Principal National has also shown that it is entitled to a declaratory judgment that the Policies are rescinded, void *ab initio* and of no effect.  In Maryland:

> When a contracting party is displeased with the other's performance, he may follow either of two alternative courses of action, if under the facts they are open to him: (1) he can reaffirm the existence of the contract and seek specific performance when appropriate or claim damages for its breach, or (2) he can repudiate the contract altogether and request rescission.

*Lazorcak v. Feuerstein*, 327 A.2d 477, 480 (Md. 1974) (citing *Kemp v. Weber*, 24 A.2d 779, 780 (Md. 1942)).  A party seeking recission of a contract "must demonstrate [it] acted promptly after discovery of the ground for recission," and "[it] must also show that [it] tendered to [the other party] all consideration and benefits received under the contract immediately after notice of the ground for recission."  *Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 894 (Md. Ct. Spec. App. 1984) (citations omitted).

Principal National has shown that it took steps to rescind the Policies "promptly after discovery" of the Decedent's material misrepresentations on the Applications.  In this case, the Decedent passed away on March 27, 2022, from complications due to COVID-19.  ECF No. 1 at ¶ 30; ECF No. 1-5.  When the Defendant submitted an insurance claim form seeking the proceeds of the Policies on June 1, 2022, Principal National initiated a routine review of the Policies, because the Decedent died within the contestable period.  ECF No. 1 at ¶¶ 33-34; *see*

16

*also* ECF No. 1-7; ECF No. 18 at ¶¶ 4-5.  Based upon this review, Principal National concluded that the Decedent had been diagnosed with COVID-19 two days before filing the Applications and should have answered "Yes" to the MEDICAL QUESTION on Part A of the Applications and to Questions 18a, 18c, 22a, 22b and 23 on Part B of the Applications.  ECF No. 1 at ¶¶ 38-40, 45.

On November 28, 2022, less than six months after receiving the Defendant's insurance claim form seeking the proceeds of the Policies, Principal National notified Defendant and the Decedent's three children that it could not pay the Decedent's life insurance benefits.  *Id*. at ¶ 46.  Principal National also mailed rescission agreements and checks representing refunds of the Policies' premiums, plus interest, to Defendant and the Decedent's three children.  *Id*. at ¶¶ 47-52.  By sending checks representing refunds of the Policies' premiums, plus interest, Principal National clearly indicated to Defendant and the Decedent's three children that it intended "to restore [them] to the relative positions which they would have occupied if" it had not issued the Policies in the first place.  *Lazorcak*, 327 A.2d at 481.  But the Defendant has refused to sign a rescission agreement or negotiate a refund check.  ECF No. 1 at ¶ 53.  And so, Principal National has shown that it is entitled to rescind the Policies, and that a declaratory judgment that the Policies are rescinded, void *ab initio* and of no effect is an appropriate remedy in this matter.

### B.  Principal National Is Entitled To A Default Judgment

Having determined that Principal National is entitled to a declaratory judgment that the Policies are rescinded, void *ab initio* and of no effect, the Court considers as a final matter whether entry of a default judgment against the Defendant in this matter is appropriate.  Rule 55(b) of the Federal Rules of Civil Procedure provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise," the Court may enter default judgment at a party's request and with notice to the defaulting party.  Fed. R. Civ. P. 55(b)(2).

The litigation history of this case makes clear that the Defendant has failed to plead, or to otherwise defend, in this civil action.  The summons and complaint were properly served on Defendant more than one year ago, on May 6, 2023.  ECF No. 8.  But, to date, the Defendant has neither answered, nor otherwise responded to, the complaint.  Given this, Principal National filed a motion for Clerk's entry of default on June 30, 2023, which the Clerk granted on July 21, 2023.

ECF Nos. 13-14.  Thereafter, Principal National filed the pending motion for default judgment, which the Defendant has also failed to respond to.  ECF No. 17.  Given this, entry of a default judgment against Defendants is warranted and appropriate in this case.  Fed. R. Civ. P. 55(b).

## V.     CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** Principal National's motion for default judgment;

(2) **ENTERS** judgment in favor of Principal National against Defendant Julie Zigment; and

(3) **DECLARES** Policy Number 9701540 and Policy Number 6257124 to be rescinded, void *ab initio* and of no effect.

A separate Order shall issue.

Judgment shall be entered accordingly.


**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

18